and hear from the appellants for you today in the case of the United States v. Powers. Thank you, Your Honor. Will Drake on behalf of Mr. Powers. First, I just wanted to note for the record that Judge Harris was my law school professor at Georgetown Law in the spring of 2007, and so I'm happy to be before her again and hope that my ability to answer questions has improved in those 15 years. Continues to grade you, actually. So, Your Honor, the fundamental disagreement here is whether this court should read its holding in Engel, which established that an indictment should be dismissed if the actus reus component of the crime is not alleged to have taken place in the venue in which charges are brought, along with this holding in Jefferson, which held that the actus reus component of wire fraud is the termination or origination of a wire into or out of the district in which charges are brought. We believe those cases go hand in glove and should be read together. Government disagrees. Counsel, can I actually do have a question about this? So I read Jefferson a little bit differently. I thought in Jefferson we said that the conduct element is the act of causing a wire to be transmitted and furtherance of a fraud. If we assumed hypothetically that the language from Jefferson that I just quoted is the court identifying the conduct element, then would this indictment be sufficient in your view? I take your hypothetical. I believe my reading of Jefferson is that Congressman Jefferson was in Africa at the time that he caused the wire to be transmitted from Kenya to Kentucky. I believe it was Kenya to Kentucky. And so there his actus reus of causing the wire was not within the Eastern District of Virginia, that the scheme to defraud, the devisal of the scheme to defraud took place in the Eastern District of Virginia, but that the actus reus component did not. I think that if the court holds that causing a wire to be transmitted into or out of the district would suffice, I think that the language in this indictment still may not achieve that because as we note from the record, and I would like to at some point point this court to a citation from the record, the U.S. Attorney's Office in this case was not aware of where these wires came in or out of the district, whether they terminated in or originated in the district, and they weren't able to allege that with sufficient particularity at the time of indictment. And so our position would be that even under that standard, I don't believe that this indictment language would be sufficient. And getting to that portion of the record at the motion to dismiss hearing on the question of improper venue, which is located at Joint Appendix 274, the government stated when we did the indictment in this case, we knew we had Bank of America, but we weren't sure where the processors were. We hadn't gotten clear information about where they were sent. Counsel, why are we looking at this? I think your briefs told us we're supposed to look just at the indictment and see if what they alleged is true, would that be sufficient? And they've alleged that within EDVA, the defendant knowingly transmitted and caused to be transmitted interstate wires in prevention of a scene. So the wires could have passed through, started there, ended there. I think that the reason that it's important to look at the government's thinking here is because the government was very clear that at the time of indictment, it didn't know that information. And so it chose to generally believe that they could find it. If you had filed a bill of particulars or something and they had responded, oh, we don't know, we can't fill in the blanks, like maybe that'd be a different question. But instead we're here on a motion to dismiss the indictment and we just look at the indictment. That's true. But I think in terms of deciding whether this indictment is ambiguous and whether it is poorly drafted or whether it is the result of a conscious decision to avoid specific pleading, I think it is important to understand the government's motivation. So if we're looking at the words on the page of this indictment and try to determine. Is that the standard, whether it's ambiguous, poorly pleaded, not particular enough, or is the standard whether it alleges the elements of the crime? It is whether the words on the page within the four corners of the document allege the elements of the crime. And I think that it's helpful to the court to understand why our contention is that that is not the case. It could not have been the case because of the admission by the government before the court that they believed, based on the law of the Fourth Circuit at the time, that all one needed to put in an indictment is in the Eastern District of Virginia, divorced from connection to any particular element within the crime itself, whether that be a mens rea component or an actus res component. The judge mentioned a bill of particulars. You did file a bill of particulars, but you only file it relating to the material misrepresentations of the alleged fraud. Why didn't you include, at least in a bill of particulars, as to venue in that? So the discovery of the issue with venue came very late in the preparation for trial. The government had expressed the desire to handle venue by stipulation. There were many draft stipulations. And on the night before the decision to sign that stipulation, the trial council discovered that a FBI 302 established that the witness who would be establishing venue could not confirm whether the wires in question passed through the Eastern District of Virginia or through Texas. Because of that, he stopped the stipulation proceeding. And when informed that a superseding indictment was going to be issued to fix a different error in the indictment, he requested that the government fix the pleading defect with regard to venue. And he was turned down. This was the result of significant back and forth between trial council and the government leading up to trial, several letters, several draft stipulations, a request for the superseding indictment to fix the error, and ultimately a motion to dismiss the indictment for failure to properly plead venue. At that motion, the court heard from the government that he had done the research and realized that he did not need to allege, in his thinking, that the actus reus of the crime passed through the Eastern District of Virginia. And concluded by saying, if you allege the Eastern District of Virginia, just those words, you're fine. We disagree. We believe that the holding an angle requires that the government allege facts that have proven true would establish proper venue. But I heard a question. I apologize. If the court adopts the government's pleading standard here and no longer requires that an indictment allege venue with regard to the essential conduct element of the crime, that level of pleading will almost certainly become the norm. And that change in the pleading requirement will eliminate a defendant's ability to litigate an indictment's facial defect on venue pre-trial. And venue will only be litigated at trial, based on evidence presented to the jury. And that would be a shift in the pleading requirement that will eliminate the very right that the Constitution enshrines to only be hauled into a courthouse for trial if that courthouse is where the criminal conduct occurred. Once the issue is before the jury, that right essentially has been eliminated because you've already been hauled into court. So, as an aside, we'll note that in U.S. v. Collins, this court held that if a defendant doesn't raise a facial defect with an indictment as regard to venue pre-trial, that that issue is waived as to the indictment. A pleading standard that only requires in the Eastern District of Virginia will eliminate the ability to point out the defect. It's so broad that you cannot identify an objection to it. And so waiver will become 100%. Beyond waiver, we'd also like to note the enormous amount of court and jury time that will be wasted if we have cases going to trial without allegations of venue that can be litigated pre-trial. This will always be a jury issue in the Fourth Circuit if all we have to allege is in the Eastern District of Virginia a crime occurred without alleging the particular elements. And I direct the court to the case of U.S. v. Bowen, in which the government alleged that a crime had taken place in the Eastern District of Virginia, the crime of harboring a fugitive. What had happened in the Eastern District of Virginia was that the arrest warrant had issued, but the harboring itself took place in South Carolina. Therefore, the court held there that because the essential conduct element of there was no venue. If that had been litigated pre-indictment, where the indictment were required to allege whether the arrest warrant took place in the Eastern District or the harboring took place in the Eastern District, there would have been no trial. And that waste of resources and that elimination of the right to be tried in the courthouse from which the conduct occurred would not have been eliminated. So while we read Jefferson and Engle in concert, and while we believe that when you're applying Engle, it makes sense to look at other cases that have established the essential conduct elements of the crime, the government disagrees and says that Jefferson is a sufficiency of the evidence case. We disagree. We believe that Jefferson essentially just identifies for the purposes of venue, what is the actus reus component of sending or receiving a wire for wire fraud. And we believe that it's perfectly appropriate for this court to rely on cases that identify the essential conduct element, whether those cases be litigating whether venue was proven to trial or whether that venue was pleaded appropriately in an indictment. I'd like to move to sentencing, Your Honor, or I can hold that to my reply depending on your preference. I see that I only have three minutes left. We just want to state that the law of the court here in the Fourth Circuit is that a judge needs to specifically address all non-frivolous arguments presented by a defendant for a below-guideline sentence. There's nothing in the record that would establish that this judge did so at sentencing or in its memorandum of opinion. We think the record on that speaks for itself. I mean, your briefs, though, before the district court judge, I know you were disputing whether these guidelines were based on sufficient data, but the thrust of your argument is that the amount of loss is a poor proxy for the seriousness of the offense and the moral culpability of the defendant, right? And it seemed to me that the district court judge went to great pains to explain why each of these enhancements and the sentence as a whole actually was an accurate proxy in this case for moral culpability and the seriousness of the offense. The judge even recalculated the amount of loss and the number of victims because he thought that they were relevant. So, you know, I take your point that he didn't parrot your brief, but he seemed to both in the hearing and in the written opinion address the thrust of your argument. Actually, I would disagree. I think the only time that he specifically engaged with the argument, he indicated that he was unsure whether it was his place to accept an argument about the reasonableness of the fraud guidelines or whether that was an argument that should be made to the U.S. Sentencing Commission. And I think that question really muddied the waters about whether this judge was engaging with this argument, accepting it or rejecting it, and explaining his reasons why, as is required by the district. Do you think he didn't know the law? I think this judge wasn't sure whether in this case an argument on policy with regard to the sentencing guidelines, that they were unreasonable based on their deterrence factors, based on the whether that was a policy argument should be made to the U.S. Sentencing Commission rather than an argument made that sentence. Well, but counsel, I feel like what's going on here, you know, the judge is right. I think that if you understand the argument being made as it is procedurally improper to impose this guideline, there's something wrong with the guideline. The backing is insufficient. It wasn't adopted properly. If that's the argument, it's not for the judge to consider. If, on the other hand, the argument is what I actually think it was, which is, no, no, I'm looking for a variance in this particular case, and one thing I want you to know is that the guidelines often overestimate the seriousness of the crime because of the focus on the amount of loss, then isn't Judge Rushing right that if we formulate the argument that way, that is addressed when a district court sort of carefully explains why, in this case, this sentence does reflect the seriousness of the crime? I think that might be true if the judge had specifically addressed that argument. But all that we have is pulling together implicit addressing of the argument based on the sentence provided and an attempt to engage with the enhancements themselves rather than the idea that this enhancement in particular does not deter and will not deter others, which is one of the 35, 53A factors. And so I think that in this case, and I recognize I'm out of time, but I wanted to finish your question. I think in this case, we can tell from the record that this specific argument was not engaged. Thank you. Great. We'll hear from you. You have some time left for rebuttal. We will now hear from Mr. Atkins. Good morning, Your Honors. I was going to start with the venue issue, but I might just pick up on the sentencing challenge and then move to the venue issue. And I'd like to start with a point you made, Judge Rushing, which is that the district court clearly rejected the underlying premise of the defendant's policy challenge. Judge Rushing, as you correctly pointed out, the underlying thesis or the central thesis, the core of the defendant's challenge, his policy challenge, was that loss was a poor proxy for the seriousness of the offense and the defendant's culpability. That is exactly how he framed it. And the district court was unequivocal that loss did, in fact, in this case, not as an academic or a policy matter or a theoretical matter, but in this case, loss did make, the amount of loss did make the offense that much more serious and did weigh heavily against the defendant. I can provide the court with a few examples. There were two or three times during the sentencing where Judge Alston stated that he could not ignore the fact that there were 41 victims in this case and that the amount of loss was $23 million. He said that both at the sentencing and in the subsequent motion, he pointed out that whether the defendant realized it or not, his actions were great because he didn't just defraud a few people out of a few dollars. And then in italics, Judge Alston wrote, he defrauded 41 people, at least 41 people, out of $23 million. Judge Alston called the number of victims both staggering and significant and said that equally astounding was the amount of money the defendant had defrauded both collectively and individually, so the entire sum and then on a victim-by-victim basis. And then he provided three examples of the most egregious cases, $4 million for Andrew Schwartzberg, $3 million for Jay Gupta, $3.5 million for Jason Donahue. The court again went back to the point that he couldn't ignore these facts, saying that it had not, would not, or would not ignore these facts. On the issue of sentencing disparities, the court went again to the issue of loss, rejecting the example that the defendant's reliance on the Almoral case was misplaced because the loss there was between $1 and $3 million. And here, of course, it was over $20 million. And the same point was made with regards to the defendant's reliance on the Stopchinsky case, when this report said that loss there was about $200,000. And of course, here it's significantly more. The court stated that it was aware of the kind of sentences that were available, but thought that 151 months was appropriate. And again, said that 151 months was appropriate to reflect the seriousness of the offense, provide just punishment, and promote respect for the law. And we cited this court's decision in Nance in our brief. And I think that's really on point. We know from Nance that when a district court rejects the central thesis of a defendant's argument, it doesn't have to then address every data point marshaled in support of that argument. And I think that really applies here. There's no question that the district court considered loss to bear extremely heavily on the defendant. And of course, that makes sense, because the loss was massive. And as far as culpability, well, there was only one defendant in this case. So that's not really a very good argument. I'm happy to answer questions on sentencing, but I can also move to the venue challenge. Move to venue. On the venue issue, and again, Judge Rushing, I think you made this point earlier, there are really two or three black-letter law principles that I think have to guide this court's assessment of the venue challenge. The first, we cited this court's decision in Rendleman in our brief, and Judge Alston relied on it. Rendleman tells us that an indictment is sufficient if it alleges the essential elements of the offense, allow the defendant to know what he has to defend against, to allow them to plead acquittal or conviction in the future. That's Rendleman. And then there's Rule 7. Rule 7 tells us that indictments have to be plain, concise, definite, written statements of the essential facts of the offense. I don't think there's any question that this indictment satisfies Rendleman and the cases Rendleman relies on or Rule 7. I don't really take the defendant to be arguing otherwise. What the defendant is, in fact, saying is that there's a venue defect here. And I think the best way to understand that argument is to go back to the very beginning. That argument was premised on the defendant's review of pretrial discovery and evidence. The defendant made that point in his motion, to which he actually attached pretrial discovery, 302s, emails between government counsel, as well as a hearing on the motion. And the defendant, I think, the argument is best highlighted by something the defendant said in his reply below. And this is at JA 93. But the defendant says that there's a serious question whether the government will be able to prove venue in this case. And, Your Honors, that argument should sound very familiar to this court because it's exactly the same argument the defendant made. And stated that there appears to be no evidence of conduct in the Eastern District of Virginia. And this court, despite the way the parties had framed things, held that actually the question was much more limited because we're dealing with a challenge to an indictment in the Rule 12 context. And under Rule 12, challenges like this need to be decided on the face of the indictment and without recourse to material beyond the indictment. That's number one. Can you add more details to the superseding indictment? It seems to be that might have been a time you had some indication of this defendant's concern. Sure. So, my best answer is what the AUSA's answer was below. So, initially, the AUSA explained that they didn't charge venue because at the time they were charging, so this is at the time of the first indictment, they knew they were dealing with Bank of America, but they hadn't ironed out all the specifics. So, given this precedent, presumably Engel, they kept things more general. The AUSA's reason for not charging, to keeping things more, to charging things in a more specific way at the superseding indictment, because surely everything had been ironed out by then, was that at that time, and this is the first page, I believe, of the government's response in opposition below, which is that at that time, trial was about a week away. And the defendant's opportunity to file motions had already passed. And the defendant had already had a motion to file additional motions denied by the district court. So, the AUSA explained that he didn't charge it in a more specific way because he didn't want there to be an 11th hour challenge to the indictment, which, of course, is exactly what happened. The defendant's motion was actually untimely, although Judge Alston didn't address that. But that is, in fact, the reason that the AUSA explained. But more fundamentally, just going back to where it began, I don't think the law demands it, and I don't think Rule 7 or this court's decision in Engle demands the government to go wire by wire in its indictment. I'm happy to answer any of the court's questions. I'm also happy to sit down. Judges? Thank you very much. Thank you. Mr. Dorey, you have a few minutes of a problem. One last short point on this issue of the motivation for not changing the indictment. I think the government was clear at the motion to dismiss hearing that it believed that the precedent in U.S. v. Meta allowed it to vary from the indictment with regard to the details of a wire. In that case, the wire went from Michigan to Maryland, where the trial was, rather than, I believe it was Missouri to Maryland, where it was indicted. And Meta said, well, you can vary because in either instance, Maryland provided the venue. The assistant U.S. attorney in this case said that based on that, he believed if you can vary from the indictment to what's proved to trial, then you need not plead it at all. And that is very clearly the decision that was made here to not plead specifically venue because venue had not yet been determined. That's the motivation. And I take Judge Rushing's point that we look at the document on its face. But here, where we're trying to interpret the meaning of the words, I think that it is appropriate to look at what the U.S. attorney's office is telling us about why it chose those specific words. I yield the balance of my time and happy to answer any questions or sit down. I want to thank both counsel for adhering to the court's concern with the COVID here, recognizing the expedited arguments. But nonetheless, we have a full explanation of your arguments here. Both of you presented yourself, your cases very well, both here in your briefs. So thank you very much. I should also point out normally we come down before it takes pride in the fact we come down and shake your hand. We're not going to do that. That's the COVID situation. But we hope the day will come when we will return back to that practice. Thank you both for your arguments.
judges: James Andrew Wynn, Pamela A. Harris, Allison J. Rushing